# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MOHAMMED ZAKARIA ZIZI et al., | : | |
| *Plaintiffs*, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KATHLEEN BAUSMAN et al., | : | No. 17-1976 |
| *Defendants*. | : | |

## AMENDED MEMORANDUM

PRATTER, J.                                                                                       JANUARY 29, 2017

Are there adequate protections for American citizens petitioning for citizenship on behalf of their alien spouses? And if there are, did the Government violate those legal protections here? The plaintiffs, Kristine Bruno and her husband Mohammed Zizi, challenge a Board of Immigration Appeals (BIA) final decision denying Ms. Bruno's I-130 petition for citizenship on behalf of Mr. Zizi. The Board denied the petition because it found that Mr. Zizi had previously entered into a fraudulent marriage. Mr. Zizi challenges this final agency action, arguing that it runs afoul of both due process and the Administrative Procedure Act (APA).

The Court finds Mr. Zizi's claims without merit and grants summary judgment in favor of the defendants. Necessarily, the Court's role is limited when reviewing agency action, and here, within that limited role, the Court finds that the agency properly reviewed the evidence before it, made a reasoned and reasonable determination, and adhered to at least the minimum demands of the APA and due process.

### BACKGROUND

The facts presented are as follows: The plaintiffs are Mohammed Zizi, an alien, and Kristine Bruno, an American citizen. Mr. Zizi entered the United States in 2001. He married his

first wife, Michelle Crozier, in May 2005. Eight months after they married, Ms. Crozier filed an I-130 "Petition for Alien Relative" form[1] on behalf of Mr. Zizi for his permanent residency. This petition, if approved, would have allowed Mr. Zizi to become a permanent resident of the United States because of his marriage to Ms. Crozier, but it was never approved. The form was disapproved because Ms. Crozier failed to appear for her required interview, and she never appealed that decision.

Mr. Zizi and Ms. Crozier divorced after less than a year of marriage. Fifty (50) days after his divorce with Ms. Crozier, Mr. Zizi married her cousin and his current wife, Ms. Bruno.[2] Shortly thereafter, Ms. Bruno filed a new I-130 petition (the subject of this litigation) on behalf of Mr. Zizi. The United States Customs and Immigration Services (USCIS) director denied the petition in September 2009, and the plaintiffs appealed. Upon review, the Board remanded the case to the USCIS director for failure to consider all of the evidence, and in September 2016, the USCIS director denied the petition again. The Board affirmed the USCIS director's decision. This action followed.

The USCIS director and BIA denied Ms. Bruno's I-130 request because they determined that Mr. Zizi had previously entered into a sham marriage with her cousin, Ms. Crozier. "[N]o [I-130] petition shall be approved if (1) the alien has previously been accorded or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States [if that marriage was] entered into for the purpose of evading the immigration laws." 8

---

[1] An I-130 petition is a permanent resident application for "immediate relatives of U.S. citizens: spouses, unmarried children under 21 years of age, and parents (if the U.S. citizen is 21 years of age or older)." *I-485 Instructions* at 20.
[2] The marriage to Mr. Zizi was Ms. Bruno's third marriage. Her second marriage was also to an alien who obtained citizenship through marriage to her.

2

U.S.C. § 1154(c). The Board had found that Mr. Zizi's previous marriage, the brief one to Ms. Crozier, was fraudulent. Hence, the Board denied Ms. Bruno's I-130 petition.

The Board based its denial in large part on Ms. Crozier's sworn testimony to USCIS agents where she admitted: "I entered into this marriage as a friend for the sole purpose of aiding [Mr. Zizi] in gaining his legal residence in the United States. I don't consider this marriage to be a true marriage." Ms. Crozier admitted that they never consummated the relationship; they maintained separate residences; and they both were involved with intimate relationships with other people during the ostensible marriage. However, she recanted these statements and the information contained in them during Mr. Zizi's pursuit of this I-130 petition, apparently for two reasons. First, she stated that her statement was coerced because she was afraid that she was liable for assisting Mr. Zizi's alleged fraud. Second, she claims she was on antidepressants when she gave the testimony. The USCIS director and BIA weighed this evidence but ultimately found it unavailing. In a twelve-page single-spaced decision, the director outlined the evidence, weighed the relative merits of it, and found that Mr. Zizi's previous marriage was a sham. Accordingly, the director denied the I-130 petition. The Board also considered the USCIS director's opinion and affirmed it in a two-page opinion outlining the relevant considerations.

Mr. Zizi filed a complaint in federal court, asserting that the decision violated due process and was arbitrary and capricious in violation of the APA. The Government moved for summary judgment based on the administrative record, and Mr. Zizi cross-moved for summary judgment.

## LEGAL STANDARD

Although "summary judgment is the proper mechanism for deciding, as a matter of law, whether an agency's action is supported by the administrative record" the district court is acting as an appellate tribunal, and "the usual summary judgment standard does not apply." *Dorley v.*

*Cardinale*, 119 F. Supp. 3d 345, 351 (E.D. Pa. 2015); *see also Uddin v. Mayorkas*, 862 F. Supp. 2d 391, 399 (E.D. Pa. 2012).

Review of final agency action is sharply limited. Under the APA, a district court may only set aside agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). This standard has two different categories. The first, "arbitrary, capricious, [or] an abuse of discretion" looks at the reasoning the agency employed in coming to its decision. *See Mirjan v. Attorney Gen. of the United States*, 494 F. App'x. 248, 250 (3d Cir. 2012) (citing *Donovan v. Adams Steel Erection, Inc.*, 766 F.2d 804, 807 (3d Cir. 1985)). The second avenue for relief is if an agency's decision is "otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). This prevents agencies from making decisions that, although well-reasoned, violate other statutory or regulatory strictures.

"In applying that standard, the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). The scope of review under this standard is narrow and a court may not substitute its judgment for that of the agency. *Judulang v. Holder*, 565 U.S. 42, 52 (2011); *see also Guzman v. Attorney Gen. of the United States*, 770 F.3d 1077, 1087 (3d Cir. 2014). An agency is only required to "articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made'" for its action to be upheld. *CBS Corp. v. Fed. Commc'ns Comm'n*, 663 F.3d 122, 137 (3d Cir. 2011) (citing *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

Final agency action is arbitrary and capricious where "'the evidence not only supports a contrary conclusion but compels it.'" *Sheng v. Attorney Gen. of the United States*, 365 F. App'x. 408, 410 (3d Cir. 2010) (quoting *Abdille v. Ashcroft*, 242 F.3d 477, 483–84 (3d Cir. 2001)).

"Reversal is appropriate only where the administrative action is irrational or not based on relevant factors." *NVE, Inc. v. Dep't of Health & Human Servs.*, 436 F.3d 182, 190 (3d Cir. 2006) (citing *State Farm*, 463 U.S. at 43). In determining whether an agency acted arbitrarily and capriciously, a district court must examine "whether the agency relied on factors outside those Congress intended for consideration, completely failed to consider an important aspect of the problem, or provided an explanation that is contrary to, or implausible in light of, the evidence." *Id*. Such an evaluation must be restricted to reasons articulated by the agency itself at the time of the decision, not merely *post hoc* rationales developed during litigation. *State Farm*, 463 U.S. at 50.

## DISCUSSION

Mr. Zizi advances four main arguments in support of his claim for relief.[3] First, he argues that the government failed to disclose derogatory information, which violates both the CFR and agency procedures. Second, he claims that the procedures here violated the Due Process Clause. Third, he argues that the Board applied the incorrect standard in denying the petition. Finally, he argues that the decision was generally arbitrary and capricious.

### I. Failure to Disclose Information

The first argument that Mr. Zizi makes is that the agency failed to disclose necessary information, which violates 8 C.F.R. § 103.2(b)(16) and various agency procedures. He makes this argument in two respects. First, he claims that the record here is incomplete. Second, he claims that he was not given full access to the record to defend his appeal.

---

[3] Ms. Bruno joins in all of Mr. Zizi's arguments. The analysis to follow applies to both plaintiffs.

### A. Incomplete Record

Mr. Zizi first claims that the administrative record is incomplete. In support, he points to redactions in the record, then to the USCIS director's reliance on interviews that were not recorded. Mr. Zizi asserts that this must mean that the decision is arbitrary and capricious because the record analyzed by the agency was incomplete. Neither of his arguments have merit.

*1. Redactions*

Mr. Zizi first argues that there are redactions that indicate an incomplete record. Mr. Zizi does not point to any law that prohibits such redactions, but simply maintains that the extent of the redactions means that the agency has not reviewed the full record. Given that the agency must articulate a "rational connection between the facts found and the choice made" *State Farm*, 463 U.S. at 43, Mr. Zizi argues that an incomplete record means that the agency's decision must be arbitrary and capricious.

The Court disagrees. The redactions complained of are minimal. They consist mostly of names, addresses, policy numbers and contact information redacted by the United States Attorney's Office to comply with federal and local rules regarding identifiers. Nothing would indicate that these redactions reveal any important information, nor do plaintiffs point to any reason why these redactions matter. They baldly assert that they are integral to defending the denial of the petition. The Court fails to see how these would aid anyone in the defense of the petition, nor how these redactions prejudice Mr. Zizi in any meaningful way. Moreover, this information is more than enough to pass the arbitrary and capricious standard. *See* Section IV, *infra*.

*2. Interview Procedures*

Mr. Zizi next claims that the USCIS investigators failed to record and transcribe interviews with witnesses. Instead, the interviews were summarized in "post-hoc investigative documents" such as memoranda from investigating officers. Pl. Br. at 11. Mr. Zizi's argument here does not rest on the adequacy of the evidence.[4] He never claims here that the failure to follow these procedures means that "the evidence not only supports a contrary conclusion but compels it." *Abdille*, 242 F.3d at 483–84. Rather, he rests his argument on the fact that the summarized interviews violate separate legally-cognizable rights. In support, Mr. Zizi points to the USCIS Adjudicator's Field Manual (AFM), which outlines parameters for recording interviews. Mr. Zizi also cites to the Executive Office of Immigration Review (EOIR) which requires videotaped interviews to be transcribed. He argues that these two facts lead to the conclusion that an agency cannot take interviews into account unless they are videotaped and transcribed.

Although "the AFM is instructive as to proper agency practice, it does not hold authority over this Court." *Jessop v. Johnson*, 2017 WL 2957820 at *4 n.7 (E.D. Pa. July 10, 2017); *see also Lawrence v. City of Phila.*, 527 F.3d 299, 316 n.6 (3d Cir. 2008) ("[A]gency manuals . . . lack the force of law"). Similarly, the EOIR regulations (requiring transcription of interviews as a clerical matter, not as an evidentiary matter) are inapplicable to the Board. Therefore, this argument fails to satisfy the requirement that the agency action is not "in accordance with law." 5 U.S.C. § 706(2)(A).

**B. Withholding of Derogatory Information**

Mr. Zizi's next argument is that he was denied access to important information. He focuses here on Ms. Crozier's admission that the marriage was a sham, claiming that the actual

---

[4] Mr. Zizi makes that argument generally, which is addressed later in this opinion. *See* Section IV, *infra*.

7

statement she made had indicia of unreliability such that he should have been shown the actual handwritten statement, not just a summary. Mr. Zizi is correct that the petitioner must be shown "[d]erogatory information unknown" to him. 8 C.F.R. § 103.2(b)(16)(i). But Mr. Zizi does not allege that he was denied notice of this derogatory information—only that he was given summaries of the information rather than the actual statements. Mr. Zizi claims that he must be given the primary documents.

The Court disagrees. The regulation at issue merely requires that the government disclose the "derogatory information" unknown to Mr. Zizi. The regulation does not require the government to turn over the evidence in its primary form. A summary therefore suffices to meet the requirement under the regulation. *See*, *e.g.*, *Sehgal v. Lynch*, 813 F.3d 1025, 1031(7th Cir. 2016) (a USCIS summary of the information is sufficient to meet the regulation's requirement).

This Court joins the Seventh Circuit Court of Appeals in questioning why the government does not simply turn over the information in its primary form to allow applicants the ability to contest the information more concretely. A more free exchange of information between the government and applicants would not only decrease the risk of erroneous deprivations, but it would also decrease litigation costs like this. However, the government is under no obligation to do so. The government complied with the regulation when it supplied Mr. Zizi with a summary of the information. Mr. Zizi even presented information to counteract it, including affidavits from Ms. Crozier recanting the damning testimony. Ultimately, the Board found this unavailing and denied the petition. Therefore, Mr. Zizi's claim here similarly fails.

## II.  Due Process Violation

Mr. Zizi next argues that even if the above claims are not cognizable for regulatory violations, the confluence of these actions amount to a due process violation. The Due Process

8

Clause requires that no individual may be "deprived of life, liberty, or property, without due process of law." U.S. CONST. AM. V. Given that the government provided ample due process, the Court finds this argument unavailing.

### A. The Implication of Due Process

The Government first argues that there is no process due for the denial of an I-130 petition. They argue that there is no substantive due process right, nor is there a property interest sufficient to trigger due process. The Court will address each of these threshold questions in turn.

#### 1. *Substantive Due Process*

For substantive due process to be implicated here, Mr. Zizi must establish the existence of a fundamental right. In evaluating a substantive due process claim, the "analysis must begin with a careful description of the asserted right." *Reno v. Flores*, 507 U.S. 292, 302 (1993). The Due Process Clause protects those rights that are "deeply rooted in this Nation's history and tradition." *Moore v. City of East Cleveland*, 431 U.S. 494, 503 (1977) (plurality opinion); *Snyder v. Massachusetts*, 291 U.S. 97, 105 (1934) ("so rooted in the traditions and conscience of our people as to be ranked as fundamental"). It also protects those concepts "'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if they were sacrificed.'" *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (quoting *Palko v. Connecticut*, 302 U.S. 319, 325-26 (1937), overruled on other grounds by *Benton v. Maryland*, 395 U.S. 784 (1969)).

Restrictions on fundamental rights must pass strict scrutiny and be narrowly tailored to serve a compelling governmental interest. *Reno*, 507 U.S. at 301-02. Where the claimed right is not fundamental, the governmental regulation need only be reasonably related to a legitimate state objective. *Reno v. Flores*, 507 U.S. 292, 303-06 (1993); *see also Bowers v. Hardwick*, 478 U.S. 186, 196 (1986), overruled on other grounds by *Lawrence v. Texas*, 539 U.S. 558 (2003)).

9

The closest Mr. Zizi comes to an established fundamental right is the right to marry and raise a family. *Zablocki v. Redhail*, 434 U.S. 374 (1978). At first blush, this would mean that the government must give due process for the approval of I-130 petitions, because the approval of that petition allows a petitioner's spouse to become a permanent resident. But I-130 forms do not change any familial composition. After the petition is granted or denied, nothing happens to interfere with a family. It is only after the government's initiation of removal proceedings that an alien may be taken away from his or her family. Although the removal may implicate due process, the step of simply denying an I-130 form does not. *See Parella v. Johnson*, 2016 WL 3566861 at *9 (N.D.N.Y June 27, 2016) (holding that an I-130 petition is not a fundamental right); *see also Iredia v. Fitzgerald*, 2010 WL 2994215 at *5 (E.D. Pa., July 27, 2010) (finding no substantive due process right in the processing of a USCIS adjustment of status application); *cf. Bakran v. Johnson*, 192 F. Supp. 3d 585, 597 (E.D. Pa. 2016) (the Walsh Act's prohibition on a spouse filing an I-130 petition on his wife's behalf does not violate substantive due process).

Without this right, Mr. Zizi is forced to argue that an I-130 application is itself a new fundamental right. Mr. Zizi has not pointed to any court that has recognized a substantive due process right in the approval of an I-130 form, or how it meets these criteria. The Court sees no reason why such an application would meet the criteria for a fundamental right. "[J]udicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground" in the field of substantive due process. *Collins v Harker Heights*, 503 U.S. 115, 125 (1992). In light of this principle, the Court finds no substantive due process right here.

### 2. *Property Interest*

Given that the Court finds no substantive due process right, Mr. Zizi must show that there is a liberty or property interest in the approval of an I-130 form. The Court finds that a property

interest is implicated here. "[P]roperty interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 571-72 (1972). Such property interests can be "created and defined by statutory terms." *Id* at 578. For example, the "welfare recipients in *Goldberg v. Kelly* had a claim of entitlement to welfare payments that was grounded in the statute defining eligibility for them. The recipients had not yet shown that they were, in fact, within the statutory terms of eligibility," but they had a right to make a showing that they were. *Id.* at 577 (citing *Goldberg v. Kelly*, 387 U.S. 254 (1970)).

Supreme Court "cases recognize that a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005). Instead, a reasonable expectation of entitlement is determined largely by the language of the statute and the extent to which the entitlement is couched in mandatory terms. *See Alexander v. Polk*, 750 F.2d 250, 260-61 (3d Cir. 1984) (holding that recipients had a property interest in a program that entitled them to eligible funds, even if those funds were limited, because there was no discretion in the distribution of the funds).

Thus, the question largely boils down to the discretionary nature of an I-130 petition. Courts within the Eastern District have diverged on whether an I-130 petition is discretionary. *Compare Iredia v. Fitzgerald*, 2010 WL 2994215 at *3 (E.D. Pa. July 27, 2010) ("the adjudication of an I-130 petition is not discretionary") *with Wang v. Johnson*, 2015 WL 4932214 at *5 (E.D. Pa. August 18, 2015) ("the decision to revoke approval of an I-130 petition is discretionary"). Circuit Courts of Appeals around the country are split on whether an I-130 approval is discretionary or mandatory. *See Ayanbadejo v. Chertoff*, 517 F.3d 273, 277-78 (5th Cir. 2008) (determining that I-130 petitions are not discretionary insofar as judicial review is concerned, but

declining to analyze the regulations to determine if there is discretion under the regulations); *Ching v. Mayorkas*, 725 F.3d 1149, 1156 (9th Cir. 2013) (the granting of an I-130 petition is not discretionary); *but see Foul v. Mukasey*, 256 F. App'x 785, 786 (6th Cir. 2007) (adjustment of status based on the approval of the I-130 petition is discretionary); *Herrera v. United States Attorney Gen.*, 316 F. App'x. 946, 947 (11th Cir. 2009) ("[a]djustment of status based on an I-130 visa petition is a discretionary immigration benefit").

The statutory scheme is also ambiguous. Section 1154(a) allows citizens to file I-130 forms on behalf of their spouses. After filing, "the Attorney General shall . . . approve the [I-130] petition" if the criteria are met and "he determines that the facts stated in the petition are true." 8 U.S.C. § 1154(b).[5] Once the application has been approved, the Attorney General must forward the application to the Secretary of State, who "shall authorize the consular officer concerned to grant the preference status." *Id*. Although the requirements for the Attorney General and Secretary of State are mandatory, the requirements for the consular officers are not. The statute merely requires that the Secretary of State "shall authorize [the consular officer] to grant" the change in status, but does not *require* the consular officer to grant it.[6] *Id*. Thus, the consular officer retains ultimate discretion to approve or grant the change in status.

---

[5] The form that the applicants fill out also provides that "[i]mmediate relatives always have a visa available once Form I-130 is approved." *I-485 Instructions* at 20.

[6] There is a rich history of consular officers having unfettered discretion to issue visas, given that the legislative power of Congress over the admission of aliens is vast. *See Fiallo v. Bell*, 430 U.S. 787, 792 (1977); *Ting v. United States*, 149 U.S. 698, 713 (1893). Over "no conceivable subject is the legislative power of Congress more complete than it is over" the admission of aliens. *Oceanic Navigation Co. v. Stranahan*, 214 U.S. 320, 339 (1909). Generally, the doctrine of consular non-reviewability precludes judicial review of the actions of consular, meaning they retain discretion to issue or decline to issue a visa. *See Kerry v. Din*, 135 S. Ct. 2128, 2131 (2015). Not even the Secretary of State may review a consular officer's decision. 8 U.S.C. § 1104(a) (the Secretary of State cannot control the "powers, duties, and functions conferred upon the consular officers relating to the granting or refusal of visas"). The only time consular officers lack the discretion to issue a visa is when an alien is "inadmissible under any provision of the INA. § 1361." *Id*; *see also* 8 U.S.C. § 1182 (outlining the criteria for inadmissibility). Notably, this defines aliens that the consular officer *cannot* issue visas to, but no statute defines the universe of the

However, to characterize the approval of an I-130 petition as discretionless solely because there is discretion at a later step in the process would mischaracterize the nature of the action. Rather, the approval of the I-130 petition is discretionless insofar as it requires the Attorney General to act once the requirements have been met. The Attorney General's action then creates another discretionless action on the part of the Secretary of State, who must inform the appropriate consulate of the approved petition. In essence, the approval of the I-130 petition allows an American citizen to expedite the visa process for a family member. Although it does not guarantee a visa for the applicant's spouse (for example, if he or she has terrorist ties, *see Kerry v. Din*, 135 S. Ct. 2128 (2015)) it places a heavy weight in favor of granting the application.

The Court therefore finds that the "grant of an I–130 petition for immediate relative status is a nondiscretionary decision. Immediate relative status for an alien spouse is a right to which citizen applicants are entitled as long as the petitioner and spouse beneficiary meet the statutory and regulatory requirements for eligibility. This protected interest is entitled to the protections of due process." *Ching v. Mayorkas*, 725 F.3d 1149, 1156 (9th Cir. 2013). Given that the Court finds due process is implicated, the Court must address the level of process given to Mr. Zizi and whether it met the minimum due process requirements.

### B. Level of Process Due

Although due process is implicated here, the government gave Mr. Zizi and Ms. Bausman ample due process. "'Due process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria Workers v. McElroy*, 367

---

aliens the consular officer *must* grant visas to. In the context of an I-130 petition, the consular officers retain discretion to issue a visa or change the status, even after the Secretary of State authorizes the grant of a visa.

U.S. 886, 895 (1961). It is a flexible notion that must adapt "as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Much like property rights, due process rights are a bundle of sticks that rise and fall according to the factual circumstances of the case and the nature of the interests involved. *See Matthews v. Eldridge*, 424 U.S. 319 (1976). These rights exist along a continuum. The greater the stakes, the more process due. *Compare Goss v. Lopez*, 419 U.S. 565 (1975) (the only process required for a student suspended from school is notice and an opportunity to be heard by the principal) *with Mathews v. Eldridge*, 424 U.S. 319 (1976) (upholding a system that required notice, an opportunity to be heard, an evidentiary hearing and subsequent judicial review for the revocation of disability benefits). In determining the level of process due, the Court must take into account (1) the private interest affected by the government; (2) the risk of erroneous deprivation under lesser procedures and the value added by additional procedure; and (3) the Government's interests, including fiscal and administrative burdens for additional procedure. *Mathews*, 424 U.S. at 334-35.

The Court finds that the due process provided here was robust and meets the minimum levels required for a change in immigration status. One would be hard-pressed to find (and the Court cannot fathom) how more process could be given here. Ms. Bruno's petition has been back and forth between the agency and the plaintiffs for the past twelve (12) years. They received an unbiased tribunal, notice of the intent to deny, an opportunity to oppose the denial of the application, notification of derogatory evidence against them and the right to present evidence disputing it, the right to have counsel advocate on their behalf, the making of a record and a statement of reasons for denial, as well as judicial review of the agency's decision. *See* Henry J. Friendly, *"Some Kind of Hearing"* 123 U. PA. L. REV 1267 (1975) (outlining the 11 elements of due process, 10 of which were present here).

Mr. Zizi's main argument is that the minor redactions and the Government's refusal to turn over Ms. Crozier's handwritten note amounts to a due process violation. Given the robust protections outlined above, and the fact that Mr. Zizi received a summary of the note, the Court fails to see how Mr. Zizi's due process rights were infringed upon. The Court finds Mr. Zizi's arguments unpersuasive, and that the procedure invoked here to deal with the challenges exceeded the minimums required by due process.

### III. Incorrect Standard of Denial

Mr. Zizi next argues that the USCIS director and the Board used the incorrect standard to find he had entered into a fraudulent marriage, and their decisions were therefore not "in accordance with law." 5 U.S.C. § 706(2)(A). The proper standard to deny an I-130 petition on this point is whether the government found "substantial and probative evidence" of an attempt to enter into a fraudulent marriage. 8 C.F.R.§ 204.2(a)(1)(ii) (outlining the requirements to find a marriage to be fraudulent). If the government finds substantial and probative evidence, the I-130 petition must be denied.

Mr. Zizi's argument here rests on the notes of the officer investigating the case. In those notes, the officer wrote that the evidence does "not show clearly and convincingly that [Mr. Zizi and Ms. Crozier] live in a marital union." Pl. Br. at 6. Whatever the officer investigating the case thought, both the USCIS director and the Board expressly recited and applied the "substantial and probative" standard when assessing the evidence before them. The investigating officer's legal thoughts are irrelevant. For example, a police officer may have an erroneous view that the standard for a criminal conviction is "preponderance of the evidence." But this belief does not somehow vitiate a judicial opinion convicting a criminal "beyond a reasonable doubt." The investigating officer's incorrect thoughts in the field are irrelevant to the standard that is actually

applied. Mr. Zizi has presented no actual evidence that these standards were misunderstood or applied incorrectly by the USCIS director or the Board.

Alternatively, Mr. Zizi's attorney argued at oral argument that in light of the supposedly scant evidence of a sham marriage presented to the USCIS director and the Board, the Court should infer that they used the wrong standard to analyze the burden, even though both the Board and USCIS director recited the correct one. This argument should more properly be used to argue that the decision itself was arbitrary and capricious. *See* Section IV, *infra*. The Court is bound to assess the statements made by the agency, and without any evidence that the standard was misapplied or misunderstood, such an unsupported argument cannot stand.

## IV. Arbitrary and Capricious Decision

Mr. Zizi's final argument is that the decision by the Board is arbitrary and capricious. A district court may set aside agency action only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Even if the district court disagrees with a decision, a "court is not to substitute its judgment for that of the agency." *NVE*, 436 F.3d at 190. An agency's decision cannot be said to be arbitrary and capricious when the agency has "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *State Farm*, 463 U.S. at 43 (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)).

"To reverse the BIA finding, [this Court] must find that the evidence not only *supports* [the opposite] conclusion, but *compels* it." *Immigration & Naturalization Serv. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992) (emphasis in original). The evidence does not compel the opposite conclusion. The two decisions combined for 14 single-spaced pages analyzing a record that had

been built over a 12-year period. Both the USCIS director and the Board found that the initial statement by Ms. Crozier was more credible than her later recantation, because Ms. Crozier's initial statement was under oath, signed, and against her interest. They weighed this against the arguments made by Mr. Zizi and found that his arguments were uncorroborated.

The USCIS director's 12-page single-spaced decision analyzed the competing arguments and found that Mr. Zizi did not bring forth sufficient evidence to show that he and Ms. Crozier lived together or held themselves out to be married. Similarly, outside of Ms. Crozier's recantation, Mr. Zizi brought forth no evidence that Ms. Crozier's statement was coerced. He similarly could not corroborate that she was on medication when she gave the incriminating statement. After weighing the conflicting testimony and evidence, they found that the marriage was a sham and that the I-130 petition was correctly denied.

The Court finds that the decisions by the USCIS director and the Board are both well-reasoned and weighed the relevant factors. A "court is not to substitute its judgment for that of the agency," *NVE,* 436 F.3d at 190, and must instead evaluate the adequacy of the agency's process. The Court is bound in its posture as a reviewing court to uphold the agency's well-reasoned decision.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is granted and the plaintiff's motion for summary judgment is denied. An appropriate order follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE